1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Eastern District of California

IN THE UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

NATHAN BANKS,                                              No. C 08-0899 PJH

         Petitioner,

         v                                              **ORDER DENYING PETITION FOR
WRIT OF HABEAS CORPUS**

WARDEN A. HEDGPETH,

         Respondent
_____/

     Petitioner, Nathan Banks, a California state prisoner proceeding pro se, seeks a writ

of habeas corpus under 28 U.S.C. § 2254.  For the reasons set forth below, the petition for

writ of habeas corpus is DENIED.

**BACKGROUND**

     On February 28, 2006, a jury found petitioner guilty of conspiracy to commit first

degree residential burglary with personal use of a firearm, first degree murder during the

commission of both a burglary and a robbery and with personal use of a firearm, first degree

residential robbery in concert with others and with personal use of a firearm, and being a

1   felon in possession of a firearm.  He was sentenced to life without a possibility of parole for

2   special circumstance murder, to ten years for personal use of a firearm, and to one year for

3   a prior prison term.

4          The California Court of Appeal summarized the facts leading to his conviction as

5   follows:

6          Fearing that a girl he knew as "Pooh" might steal something from his
       apartment in Bakersfield, Joe Sanders asked his neighbor Michael Colbert to
7       stay while he was in Los Angeles on the night of February 18, 2005.
       Colbert and his friend Louis Steele were at Sanders's apartment when Jordan
8       "Pooh" Bates knocked at the door and walked into the bedroom, where she
       stayed by herself for about a minute before she left.
9
          Moments later, Bates returned to the apartment with her boyfriend [petitioner]
10       and Dedrick Langston. [Petitioner] and Langston both had handguns.
       [Petitioner] ordered Colbert onto the floor.  Colbert recognized his voice as that
11       of the caller who had asked him earlier that night "where the shit was."  The
       next day, police found [petitioner] at the residence where the call originated.
12
          Bates asked Colbert what was in his pants.  He gave her his wallet. [Petitioner]
13       asked him where Sanders was and "where the shit was."  He told him Sanders
       was in Los Angeles but otherwise said he "wasn't saying nothing." [Petitioner]
14       hit him on the head with his gun and told him "don't look at him, he is going to
       put a bullet in [his] head."  His head started to bleed.
15
          Bates, Langston and Steele spent a few minutes together in the bedroom.
16       Colbert heard Langston ask Steele, "Where is it at?," and heard Steele say,
       "This is all I got."  Back in the living room, Langston told Colbert to sit on the
17       couch, next to Steele.

18          Bates and [petitioner] left the apartment.  Langston asked Colbert and Steele,
       "What else do you – anything else you got up in there?"  Steele said Sanders
19       "got nothing, he broke."  Langston shot Colbert and Steele.  Colbert survived,
       but Steele died.
20
   People v. Banks, Case No. F050149, California Court of Appeal Opinion at 1-2, lodged doc.
21
   4 (footnote omitted).
22
          The California Court of Appeal affirmed the judgment.  The Supreme Court of
23
   California denied review.  Petitioner did not seek state habeas review.
24
          Petitioner filed the instant federal habeas petition on June 26, 2008.  He alleges that
25
   (1) improper admission of Colbert's identification of him as the perpetrator violated his right
26
   to due process, (2) the improper admission of out-of court statements made by an
27
   assortment of speakers violated his constitutional rights, (3)  trial counsel was ineffective for
28

United States District Court
For the Eastern District of California

failing to object to the admission of testimony regarding co-conspirator Langston's flight and arrest, (4) the prosecutor's improper cross-examination of petitioner violated his constitutional rights, and (5) the cumulative effect of the errors at trial violated his rights.[1] Respondent filed an answer on December 8, 2008.  Petitioner did not file a traverse.

## LEGAL STANDARD

This court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); Rose v. Hodges, 423 U.S. 19, 21 (1975).

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412–13 (2000).  If the state court did not reach the merits of a claim, federal review of the claim is de novo.  Nulph v. Cook, 333 F.3d 1052, 1057 (9th Cir. 2003).  An application for a writ of habeas corpus may be denied on the merits, notwithstanding the applicant's failure to exhaust remedies in state court.  28 U.S.C. § 2254(b)(2).

A federal court must presume the correctness of the state court's factual findings.  28 U.S.C. § 2254(e)(1).  The state court decision implicated by 2254(d) is the "last reasoned decision" of the state court.  See Ylst v. Nunnemaker, 501 U.S. 797, 803–04 (1991); Barker v. Fleming, 423 F.3d 1085, 1091–92 (9th Cir 2005).  When there is no reasoned opinion from the highest state court to have considered the petitioner's claims, the district court

---

[1] To the extent that petitioner's claims lack specificity, the court construes them to mirror the allegations petitioner raised in his Petition For Review filed with the Supreme Court of California.  See Pet.'s Exh. A.

United States District Court
For the Eastern District of California

looks to the last reasoned state court opinion, which, in this instance, is the decision of the

California Court of Appeal on direct review of petitioner's conviction.  See Nunnemaker, 501

U.S. at 801–06; Shackleford v. Hubbard, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000).

Habeas relief is warranted only if the constitutional error at issue had a "'substantial

and injurious effect or influence in determining the jury's verdict.'"  Brecht v. Abrahamson,

507 U.S. 619, 638 (1993).

**ANALYSIS**

A.

Petitioner alleges that the state court's admission of Colbert's in-court identification of

him as the perpetrator was contrary to state law and violated his right to due process.

Respondent argues the contrary.

On February 21, 2006, trial counsel filed a motion in limine to exclude from evidence

Colbert's in-court identification of petitioner.  He asserted that Colbert lacked the personal

knowledge to identify petitioner and Langston as the perpetrators.  In prior testimony,

Colbert had acknowledged that he obtained petitioner's and Langston's names from a

newspaper article and a homicide detective, and admitted seeing their photos in a

newspaper and on television.  The trial court denied the motion.  Petitioner contends that

this denial violated his constitutional rights.

In addressing petitioner's claim on appeal, the state court stated:

> At the hearing, Colbert identified [petitioner] as one of the two males who
> entered the apartment and as the one who did not shoot him and Steele.  He
> testified that before a local newspaper published [petitioner's] photo, he saw
> two lineups in which he could not identify anyone, that he recognized
> [petitioner] in the newspaper photo from his memory of the crimes, that he
> identified [petitioner] in court but not from the newspaper photo but from his
> memory of the crimes, and that he could have identified [petitioner] in court
> even if he had not seen the newspaper photo.  The officer testified that Colbert
> gave her descriptions of both males who entered the apartment and said he
> could identify both if he were to see them again.  The detective's report
> indicated that he showed Colbert a photo lineup with [petitioner's] photo and
> that Colbert said that two other people in the lineup were similar in appearance
> to the perpetrators but that he could not identify anyone.

Banks at 4.  The state court concluded that the identification procedure was not unduly

suggestive and did not violate due process.  Id. at 4-5.

4

**United States District Court**
For the Eastern District of California

1    The admission of evidence is not subject to federal habeas review unless a specific

2    constitutional guarantee is violated or the error is of such magnitude that the result is a

3    denial of the fundamentally fair trial guaranteed by due process.  See Henry v. Kernan, 197

4    F.3d 1021, 1031 (9th Cir. 1999); Colley v. Sumner, 784 F.2d 984, 990 (9th Cir.), cert.

5    denied, 479 U.S. 839 (1986).  The due process inquiry in federal habeas review is whether

6    the admission of evidence was arbitrary or so prejudicial that it rendered the trial

7    fundamentally unfair.  See Walters v. Maass, 45 F.3d 1355, 1357 (9th Cir. 1995); Colley,

8    784 F.2d at 990.

9    The record supports the state court's conclusions.  Colbert testified that he saw

10    pictures of petitioner and Langston in the *Bakersfield Californian* newspaper after he was

11    released from the hospital and recognized the two men from the night of the robbery.

12    Reporter's Transcript ("RT") 13-4, lodged doc. no. 3.  Colbert testified that had he not seen

13    the pictures in the newspaper, he would still have been able to identify petitioner in court

14    based on his memory of the crimes.  Id. at 19.  He did not, however, know petitioner's and

15    Langston's names before seeing the article.  Id. at 13.  He also failed to identify anyone in a

16    line-up.  Id. at 13-14.

17    Colbert further stated that he had consistently described petitioner as the heavyset,

18    taller and older robber.  Id.   An officer who interviewed Colbert at the scene of the crimes,

19    and subsequently at a medical center, testified that Colbert provided her with a description

20    of the persons involved in the robbery and told her that he could identify the robbers if he

21    saw them again.  Id. at 28.  The record demonstrates that the identification procedure was

22    not so suggestive as to render the trial fundamentally unfair.

23    Moreover, pursuant to a plea agreement, Bates testified against petitioner and

24    inculpated him in the crime.  In light of this testimony, even assuming that the in-court

25    identification procedure was somehow tainted, it was not prejudicial.

26    The state court decision was not contrary to, and did not involve an unreasonable

27    application of, clearly established federal law as established by the Supreme Court of the

28    United States.   Accordingly, petitioner's claim is denied.

B.

Petitioner alleges that the admission of out-of-court statements by an "assortment of speakers," including a co-conspirator, violated his confrontation clause and due process rights.  Although petitioner does not specify the allegedly objectionable statements, the court construes them to be those of Langston and Sanders, as specified in his Petition For Review filed with the Supreme Court of California.  Pet.'s Exh. A.  Trial counsel did not object to the admission of these statements.

As noted above, the admission of evidence is not subject to federal habeas review unless a specific constitutional guarantee is violated or the error is of such magnitude that the result is a denial of the fundamentally fair trial guaranteed by due process.  See Henry, 197 F.3d at 1031.

Langston's allegedly objectionable statements were contained in Bates' trial testimony and pertained to a conversation she overheard between Banks and Langston after the crimes.  Bates testified as follows:

Q.   Then what?

A.   Before we leave, [Langston] asked [petitioner] he think I was going to tell.  And [Langston] said, no, he going to make sure I don't say nothing.

Q.   Who says they're going to make sure you don't say anything?

A.   [Petitioner] says he going to make sure I don't say anything.

Q.   So if I understand correctly, [Langston] talks to him about how do we know if you're not going to talk?

A.   Huh?

Q.   Can you go through it again?  Who says what first?

A.   Before we leave, before we walk off, [Langston] asked [petitioner] does he think I'm going to tell. [Petitioner] tells [Langston] no, he going to make sure I don't say nothing.

Q.   That's referring to you not saying anything?

A.   Yes.

RT 226-227, lodged doc. no. 2.

1      Sanders' statements were referenced in detective Mark Charmley's testimony

2    regarding his interview of Colbert at the hospital.  Charmley testified as follows:

3              Q.    Did [Colbert] say whether or not Joe Sanders told him about the
                     girl coming over?
4
               A.    Yes.
5
               Q.    What did he say?
6
               A.    Sanders asked him if he would stay and watch the apartment
7                    because there was a girl coming over that may rob the place.
                     And I tried to be specific in what he meant by robbing.  And it
8                    wasn't literally Sanders – or Colbert told me he didn't get the
                     impression that she was going to actually do a robbery, but might
9                    steal something from him.

10             Q.    Might take something from the apartment?

11             A.    Yes.

12             Q.    But not in what you know as a by force or fear situation?

13             A.    Yes.

14   RT 303-304, lodged doc. no. 2.

15      In addressing petitioner's claim on appeal, the state court found counsel's failure to

16   object forfeited petitioner's right to appellate review.  Banks at 6.

17      Petitioner's claim is procedurally defaulted due to his failure to object at trial.  Under

18   the doctrine of procedural default, federal courts will not review "a question of federal law

19   decided by a state court if the decision of that court rests on a state law ground that is

20   independent of the federal question and adequate to support the judgment."  Coleman v.

21   Thompson, 501 U.S. 722, 729 (1991).  Thus, if petitioner failed to comply with state

22   procedural rules and was barred from litigating a constitutional claim in state court, the claim

23   may be considered on federal habeas only if petitioner shows "cause" for the default and

24   "actual prejudice" from failure to raise the claim, or demonstrates that failure to consider the

25   claim will result in a fundamental miscarriage of justice.  See id. at 750.

26      California has long required a defendant to make a timely and specific objection at

27   trial in order to preserve a claim for appellate review.  See, e. g., People v. Ramos, 15 Cal.

28   4th 1133, 1171 (1997); People v. Green, 27 Cal. 3d 1, 27 (1980).  The Supreme Court has

acknowledged that a state court's application of the contemporaneous objection rule may constitute grounds for default.  See Wainwright v. Sykes, 433 U.S. 72, 87 (1977).  The Ninth Circuit has honored defaults for failure to comply with the contemporaneous objection rule. See Vansickel v. White, 166 F.3d 953, 957–58 (9th Cir. 1999).  Here, petitioner's failure to object at trial precludes federal review of his claim.

Moreover, petitioner's claim lacks merit.  Petitioner fails to demonstrate that the admission of Langston's and Sanders' statements was so prejudicial as to render the trial fundamentally unfair.  Furthermore, the trial court cannot be deemed to have erred in admitting the above statements because in the absence of an objection, it did not rule on the matter.  Petitioner cites no authority requiring a trial court to sua sponte rule on the admissibility of evidence.

For the above-mentioned reasons, petitioner's claim is denied.

C.

Petitioner alleges that trial counsel was ineffective for failing to object to the admission of irrelevant testimony regarding co-conspirator Langston's flight and arrest. A police sergeant testified that while on patrol, he saw Langston's empty van parked near a residence.  As he spoke to people in the residence, he observed a person run across a nearby road.  The sergeant set up a perimeter with the help of other officers.  The person suddenly reappeared, the sergeant drew his weapon and ordered him to stop.  The person kept running, but was apprehended by other officers after he jumped over a fence.  He was then arrested and identified as Langston.  Petitioner's trial counsel did not object to this testimony.

On appeal, the state court rejected petitioner's argument.  The court stated: "[w]ith compelling evidence of [petitioner's] guilt in the record, the likely impact on the jury of evidence that merely *suggested someone else's* consciousness of guilt was negligible.  Lack of an objection rarely establishes ineffective assistance."  Banks at 9.

United States District Court
For the Eastern District of California

8

United States District Court
For the Eastern District of California

To prevail on a habeas claim of ineffective assistance of counsel, Petitioner must establish both (1) that counsel's performance was so deficient that it fell below an "objective standard of reasonableness" and (2) that the deficient performance was prejudicial, rendering the results of his trial unreliable or fundamentally unfair. See Raley v. Ylst, 470 F.3d 792, 799 (9th Cir. 2006) (quoting Strickland v. Washington, 466 U.S. 668, 688, 692 (1984)). To establish prejudice, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

Petitioner fails to demonstrate a reasonable probability that evidence of Langston's flight, which merely suggested his consciousness of guilt, affected the jury's verdict. Strickland, 466 U.S. at 694. Evidence of petitioner's guilt was compelling. Specifically, Colbert identified him as the perpetrator and Bates testified to his participation in the offenses. The state court reasonably denied this claim. Accordingly, petitioner's claim is denied.

### D.

Petitioner alleges that the prosecutor committed numerous acts of misconduct during his cross-examination of petitioner. Although petitioner does not identify the acts of misconduct in his petition, the court construes them to be those identified in his Opening Brief to the California Court of Appeal to the Fifth Appellate District. Pet.'s Exh. B. The purported misconduct consists of allegedly argumentative questions in two lines of inquiry by the prosecutor, and an alleged statement of personal opinion in a third line of inquiry.

The first allegedly objectionable line of inquiry arose after petitioner testified to buying, selling and using drugs:

Q. [Prosecutor]: Let me ask you this: When you are selling drugs, are you doing it right out in the middle of the public?

[Defense Counsel]: Your Honor, object. Relevance.

9

[The Court]:                Sustained.

Q. [Prosecutor]:      When you sell drugs, you try to hide that from the
                            police, don't you?

[Defense Counsel]: Objection.  Relevance.

[The Court]:                 Sustained.

RT 387, lodged doc. no. 2.

The second allegedly objectionable line of inquiry arose when the prosecutor asked

petitioner about his use of Bates in purchasing drugs:

Q. [Prosecutor]:      How do you feel about asking this 17-year old girl,
                            your girlfriend, to go buy drugs?

A. [Petitioner]:         Well, at the time, I was told from her and her
                            mother that she was 18 years old when I first
                            started talking to her.  And the drug thing comes up
                            when I'm looking for it, and she tells me she knows
                            where to get it.

Q. [Prosecutor]:      How does it make you feel having your girlfriend go
                            out and buy drugs for you?

A. [Defense counsel]:      Objection, your Honor.

[The Court]:                Sustained.  I think it's irrelevant.

RT 402, lodged doc. no. 2.

Finally, the third allegedly objectionable statement was made at the end of

petitioner's cross-examination:

Q. [Prosecutor]:      Let me ask you this, [petitioner].  Is a handful of
                            marijuana and 30 bucks worth killing two kids to get
                            rid of them as potential witnesses?

A. [Petitioner]:         It's not worth killing nobody ever, sir.  It's a waste.

[Prosecutor]:            Your are right there.  No other questions.

RT 408, lodged doc. no. 2.

In addressing this claim on appeal, the state court found that petitioner forfeited his

right to appellate review because he failed to object to the comments on grounds of

prosecutorial misconduct.  Banks at 11.

10

**United States District Court**
For the Eastern District of California

1      The touchstone of due process in cases of prosecutorial misconduct is the fairness of

2  the trial, not the culpability of the prosecutor.  See Smith v. Phillips, 455 U.S. 209, 219

3  (1982).  The relevant inquiry is whether the prosecutor's comments "so infected the trial with

4  unfairness as to make the resulting conviction a denial of due process." Darden v.

5  Wainwright, 477 U.S. 168, 181 (1986).

6      Here, the record does not demonstrate that the prosecutor's comments rendered

7  petitioner's trial unfair.  The prosecutor's questions regarding petitioner's manner of selling

8  drugs and use of Bates to sell drugs may have been irrelevant, but were not argumentative.

9  His rhetorical flourish at the conclusion of petitioner's cross-examination may have been

10  argumentative, but did not offer personal opinion as to petitioner's guilt, nor did it so infect

11  the trial with unfairness as to violate due process.  The prosecutor's comments did not

12  constitute misconduct.  Accordingly, petitioner's claim is denied.

13                         E.

14      Petitioner's alleges that cumulative error requires reversal of his conviction.

15  Respondent argues the contrary.  On direct appeal, the state court found no cumulative

16  error requiring reversal of the judgment.  Banks at 12.

17      Even if no single trial error is sufficiently prejudicial to warrant the granting of relief,

18  the cumulative effect of several errors may still prejudice a defendant so much that his

19  conviction must be overturned.  See Alcala v. Woodford, 334 F.3d 862, 893-95 (9th Cir.

20  2003).  However, where no single constitutional error exists, there can be no cumulative

21  error.  See Mancuso v. Olivarez, 292 F.3d 939, 957 (9th Cir. 2002).   As petitioner fails to

22  establish any errors at trial, the state court's denial of his claim was reasonable.

23  Accordingly, petitioner's claim is denied.

**CONCLUSION**

For the reasons set forth above, the petition for a writ of habeas corpus is DENIED.
The clerk shall enter judgment in favor of respondent and close the file.

**IT IS SO ORDERED.**

2/8/10                     _____

                           **PHYLLIS J. HAMILTON**
                           **United States District Judge**